# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
June 2000 Session

## JACKIE MCGREGOR v. GREGOR SCOTT MCGREGOR

**Appeal from the Circuit Court for Hamilton County**
**No. 97DR-0428      L. Marie Williams, Judge**

**FILED SEPTEMBER 26, 2000**

**No. E1999-00877-COA-R3-CV**

---

This is a divorce case.  Following a bench trial, the court below (1) granted the parties a divorce on stipulated grounds; (2) divided the marital property; and (3) found that wife was not entitled to an award of alimony, but that funds withdrawn by her from a joint account immediately prior to her filing for divorce constituted necessary temporary support for her and the parties' daughter.  Wife appeals the trial court's characterization of certain real property as marital property and the trial court's division of the marital property.  Both wife and husband take issue with the trial court's treatment of the funds withdrawn by wife from the joint account.  We affirm the judgment of the trial court, as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed as Modified; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and D. MICHAEL SWINEY, JJ., joined.

Thomas Crutchfield, Chattanooga, Tennessee, for the appellant, Jackie McGregor.

Grace E. Daniell, Chattanooga, Tennessee, for the appellee, Gregor Scott McGregor.

## OPINION

I.

In this divorce case, the trial court dissolved the marriage of Jackie McGregor ("Wife") and

Gregor Scott McGregor ("Husband"). The parties had been married since 1975, and their marriage produced one child, Keely (DOB: April 2, 1981).[1]

Wife has a bachelor of science degree and worked as a real estate agent from 1983 to 1989 and from 1992 to 1996. She allowed her real estate license to lapse in October, 1996, after an unsuccessful lawsuit regarding real estate she had attempted to purchase. Wife subsequently worked as a waitress and as a social worker. According to Wife's income and expense statement, her monthly income was $1,390 while her expenses were $1,515. She testified, however, that her expenses were greater than represented on her income and expense statement.

Husband worked as a contractor remodeling homes until he allowed his contractor's license to lapse in 1997. At the time of trial, he was working full-time as a painter earning $13.00 per hour. He testified that inclement weather sometimes affected his ability to work a full 40-hour week. According to Husband's income and expense statement, Husband's monthly income was $1,125.80, and his monthly expenses were $1,474.

In March, 1996, the parties formulated what is referred to in the record as "the plan." The purpose of "the plan" was to get the parties out of debt. "The plan" involved remodeling the marital residence and selling it. The parties then proposed to utilize the proceeds, along with Wife's inheritance of $50,000 from her mother's estate, to pay off debts and to purchase a lot ("the Brady Point property") on which they planned to build a new marital residence.

On March 20, 1996, the parties entered into a real estate sales agreement for the purchase of the Brady Point property for $25,000. This agreement contains the following language:

> Purchasers assign the amount of twenty-five thousand dollars and 00/100 cents from the estate of [Wife's mother] to sellers as of todays [sic] date verified by phone call with [their attorneys]. Purchasers will sign necessary papers to effect this.

In the meantime, the parties applied for a loan to remodel the marital residence. On their loan application, the parties listed Wife's inheritance as a joint asset.

The parties closed on the Brady Point property in August, 1996. Many fees and expenses relating to this property, including the down payment, an architect fee, an appraisal fee, a credit report fee, and taxes were paid from a joint account of the parties.

The parties remodeled the marital residence and sold it in January, 1997. Most of the proceeds from this sale were used to pay off debts; the remaining funds, being $18,000, were deposited into the joint account. In late January, 1997, Husband withdrew $500 from this account

---

[1] The complaint and answer indicate that Keely's date of birth is February 4, 1981. The statement of the evidence indicates that Keely's date of birth is April 2, 1981.

to reimburse him for certain remodeling expenses paid by him out of his business account. When Wife learned of Husband's withdrawal, she became upset, and on February 3, 1997, she withdrew the remaining $17,500 from the account. According to Husband's testimony, Wife attacked a co-worker of Husband's on the same day,[2] and Husband spent the night away from the marital residence. He returned to stay the nights of February 4 and February 5, 1997, and was "driven out" on the night of February 6, 1997. When he returned the next morning, Wife called the police. Wife filed this divorce action on February 11, 1997.

On May 15, 1997, the trial court (1) ordered Wife to pay into court the balance of any funds held by Wife that were withdrawn from the parties' joint account; and (2) ordered Husband to pay $81 per week in child support. Wife subsequently paid approximately $3,700 into court, the balance of approximately $13,800 having been spent on, among other things, $2,200 in attorney's fees, $6,000 for a year's worth of rent, and $5,600 for moving and living expenses for her and Keely. On June 4, 1997, the trial court ordered that the $3,700 paid into court "be paid for the minor child's education and for temporary alimony pendente lite."

The trial court awarded the parties a divorce on stipulated grounds on October 17, 1997, but referred to mediation issues relating to the division of the property, child custody, child support, and alimony. Mediation failed, and the court heard testimony on the reserved issues in 1999.

On June 2, 1999, the trial court, among other things:

> (1) found that the Brady Point property was marital property, "its character having been transmuted from separate to marital property by the treatment of the property";
>
> (2) ordered that the Brady Point property be sold for a minimum purchase price of $50,000, the proceeds to "be utilized first to pay any unpaid portion of the guardian ad litem's fee, second to pay any unpaid therapy fees for the benefit of the child, third to pay any tax indebtedness which arose during the marriage or which is related to the Brady Point lot, fourth to pay any unsecured debt of the parties, and next to pay any secured debt of the parties. Any proceeds remaining will be divided equally between the parties.";
>
> (3) divided several items of personal property; and
>
> (4) found that no alimony should be awarded.

---

[2] Wife denies attacking the co-worker, a female, but admits that she referred to the co-worker as "trailer trash" and told her that she should have her teeth fixed. Wife admits biting Husband and hitting his truck with a two-by-four in 1993. Wife alleges that Husband had at one time hit her in the head with a frying pan and had pulled her by her hair. Husband denies these allegations.

Upon Husband's motion to alter or amend asserting that he is entitled to half of the $17,500 sum that Wife withdrew from the joint account prior to separation, the court denied the motion, finding that those funds were necessary support for Wife and Keely.

Wife now appeals, raising as issues the trial court's characterization of the Brady Point property as marital property and the trial court's division of the marital property. Wife and Husband both take issue with the trial court's treatment of the $17,500 Wife withdrew from the joint account.

II.

Since this is a non-jury case, our review is *de novo* upon the record of the proceedings below. That record comes to us with a presumption of correctness as to the trial court's factual findings, a presumption that we must honor unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d). We review the trial court's conclusions of law *de novo* with no presumption of correctness. ***Adams v. Dean Roofing Co.***, 715 S.W.2d 341, 343 (Tenn. Ct. App. 1986).

III.

A.

In divorce cases, Tennessee recognizes two distinct classes of property: (1) "marital property", as defined in T.C.A. § 36-4-121(b)(1) (1996); and (2) "separate property", as defined in T.C.A. § 36-4-121(b)(2) (1996). The distinction is important because, in an action for divorce, only marital property is divided, distributed, or assigned between the parties. *See* T.C.A. § 36-4-121(a)(1) (1996). Implicit in the statute is the understanding that separate property is not divided between the parties. ***Brock v. Brock***, 941 S.W.2d 896, 900 (Tenn. Ct. App. 1996).

Generally, property that is acquired during the marriage by either or both spouses and still owned by either or both spouses when the divorce complaint is filed is classified as marital property and is thus subject to equitable division. T.C.A. § 36-4-121(b)(1). However, property acquired by a spouse by gift, bequest, devise or descent, even if acquired during the marriage, is separate property and not subject to division. T.C.A. § 36-4-121(b)(2)(D).

Under certain circumstances, however, property generally deemed separate may be found to have "transmuted" into marital property:

> [Transmutation] occurs when separate property is treated in such a way as to give evidence of an intention that it become marital property. *One method of causing transmutation is to purchase property with separate funds but to take title in joint tenancy.* This may also be done by placing separate property in the names of both spouses. The rationale underlying both these doctrines is that dealing

-4-

> with property in these ways creates a rebuttable presumption of a gift
> to the marital estate….The presumption can be rebutted by evidence
> of circumstances or communications clearly indicating an intent that
> the property remain separate.

*Batson v. Batson*, 769 S.W.2d 849, 858 (Tenn. Ct. App. 1988) (emphasis added) (brackets in original).

A court's division of marital property must be accomplished upon consideration of the statutory factors found in T.C.A. § 36-4-121(c) (1996). Marital fault cannot be considered. T.C.A. § 36-4-121(a)(1). Appellate courts are to defer to a trial court's division of marital property unless the trial court's decision is inconsistent with the statutory factors or is unsupported by the preponderance of the evidence. *Brown v. Brown*, 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994).

In the instant case, the trial court characterized the Brady Point property as marital property, "its character having been transmuted from separate to marital property by the treatment of the property." Wife argues that the finding of transmutation is erroneous. More specifically, she argues that even though the property was titled jointly, any intent on her part for the property to be treated as a marital asset was (1) thwarted by the breakup of the marriage; and (2) based upon Husband's fraud, *i.e.*, Husband's feigned compliance with "the plan" as a scheme to enable him to obtain a greater allotment of property after he abandoned the marriage.

We find that the evidence does not preponderate against the trial court's finding that the Brady Point property had transmuted into marital property. Even though the property was purchased with Wife's inheritance, the property was titled jointly. There is insufficient proof in the record to rebut the resulting presumption of a gift to the marital estate. On the contrary, the evidence indicates that the parties treated the property as a marital asset. The inheritance was listed as a joint asset of the parties on the parties' loan application when they sought funding for the addition to the marital residence. In accordance with "the plan," the inheritance was used to pay the parties' legal bills and the down payment, tax bills, and construction loan on the Brady Point property, which closed in August, 1996. The events leading to the filing of the divorce action did not occur until the first week of February, 1997. We are concerned with the intent of the parties at the time they implemented "the plan," not at the time the divorce was imminent, and the evidence does not preponderate against the trial court's finding that the parties treated the Brady Point property as a marital asset.

Nor can we say that the evidence preponderates against the trial court's finding that "there was no fraudulent conveyance in anticipation of the filing of the petition for divorce by either party." The evidence instead suggests that Husband did not want to divorce Wife. He did not leave the marriage voluntarily, but rather was "driven out" by Wife. Wife, on the other hand, had previously spoken to a friend about divorcing Husband, had previously prepared divorce papers, and was the party who filed for divorce. Therefore, we find and hold that the trial court did not err in characterizing the Brady Point property as marital property.

B.

Wife next argues that, even if the trial court was correct in characterizing the Brady Point property as marital property, it erred in its disposition of the property. More specifically, Wife argues that the trial court erred (1) in approving the sale of the Brady Point property for $50,000; (2) in ordering that certain indebtedness be paid from the proceeds of the sale of the property before any proceeds are divided and distributed between the parties; and (3) in ordering that any proceeds remaining after certain debts are paid are to be divided equally between the parties. We will examine each of these contentions in turn.

According to the statement of the evidence that was presented at the hearings in 1997, Wife valued the Brady Point property at $25,000 while Husband testified that the property had been appraised at $50,000. In its order of June 2, 1999, the trial court ordered that "[t]he Brady Point property will be placed for sale at a minimum purchase price of $50,000.00." Husband subsequently filed two motions, the first seeking an order requiring Wife to list the property for sale at a price of $50,000, and the second seeking an order allowing Husband to accept a third party's offer to purchase the property for $48,000 without incurring a realtor's fee. Wife, in response to one or both of these motions, apparently proffered a written appraisal of the property valuing it at $80,000. The trial court granted Husband's motions on August 3, 1999. Wife now argues that the trial court's order approving the sale of the Brady Point property for $50,000 is erroneous in light of the appraisal indicating the value of the property to be $80,000.

The value to be given a marital asset is a question of fact. **Kinard v. Kinard**, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998). In making this determination, the trial court is to consider all relevant evidence, and, if the evidence is conflicting, the court "may assign a value that is within the range of values supported by the evidence." **Id**. An appellate court is to presume a trial court's factual determinations are correct unless the evidence preponderates against them. **Id**.

We find that the evidence does not preponderate against the trial court's order approving the sale of the Brady Point property for $50,000 or to a third party for $48,000 without a realtor's fee. The court had before it the oral testimony of Wife and Husband valuing the property at $25,000 and $50,000 respectively and, in addition, Wife's proffered appraisal valuing the property at $80,000. The trial court's order assigned a value to the property that is within the range of values supported by the evidence, and, therefore, we cannot say that the evidence preponderates against this determination. Thus, we find this issue adverse to Wife.

Wife next takes issue with the trial court's determination that the monies realized from the sale of the Brady Point property are to be applied to "any tax indebtedness which arose during the marriage or which is related to the Brady Point lot" and to pay "any unsecured debt of the parties" before any proceeds of the sale are divided between the parties. She asserts that she should not be required to pay any portion of Husband's "separate" debts.

The evidence does not preponderate against the trial court's determination in this regard. Husband stated that he incurred a tax liability because Wife refused to file a joint return with him and that they would have been entitled to a refund had they filed jointly. We find that the trial court did not err in finding these debts to be marital debts, and therefore, we find no error in ordering that they be paid out of martial property before any distribution to the parties.

Wife also argues that even if the Brady Point property is properly characterized as marital property, the trial court's decision to equally divide the proceeds remaining after payment of debts is erroneous. On this point, we agree.

Once property is classified as marital property, courts must equitably divide the marital property in accordance with the statutory factors found in T.C.A. § 36-4-121(c). One of these factors is "[t]he contribution of each party to the acquisition…of the marital…property." T.C.A. § 36-4-121(c)(5). We are of the opinion that the trial court erred in failing to give sufficient consideration to this factor in dividing the Brady Point property.

As previously indicated, the Brady Point sales agreement contains the following language:

> Purchasers assign the amount of twenty-five thousand dollars and 00/100 cents from the estate of [Wife's mother] to sellers as of todays [sic] date verified by phone call with [their attorneys]. Purchasers will sign necessary papers to effect this.

The agreement provides that the purchase price of the property is $25,000. The evidence indicates to us that the full purchase price of the Brady Point property was paid with funds from Wife's inheritance. Thus, Wife contributed the full amount of the purchase price for property that closed approximately six months before Wife filed for divorce. In light of this fact, and in light of T.C.A. § 36-4-121(c)(5), we find that the trial court erred in dividing equally between the parties any net proceeds from the sale of the Brady Point property. We modify the trial court's judgment so as to order that the proceeds remaining, if any, after the property has been sold and the debts have been paid, be awarded to Wife.

In addition to being dissatisfied with the trial court's treatment of the Brady Point property, Wife argues that the trial court erred with respect to several smaller items: (1) an antique cupboard; (2) an antique armoire; and (3) Husband's business assets.

Wife argues that the antiques are her separate property. We find that the evidence does not preponderate against the trial court's treatment of the antiques. The testimony of the parties concerning these items conflicted, and thus, the trial court's determination as to these items is grounded in its assessment of the credibility of the parties. This being the case, the trial court's determination is entitled to great weight on appeal, *see Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995), and we find and hold that the evidence does not preponderate against the trial court's decision.

With respect to the assets of Husband's business, Wife's argument is that the trial court failed to account for them. We find this assertion to be incorrect. In its June 2, 1999 order, the trial court stated that "[t]he remaining property in dispute are those items highlighted in Exhibit 33 which have not been marked through. The Court finds these items are marital property." An examination of Exhibit 33 reveals that there are several items of Husband's business property that are marked through. Thus, the trial court found these assets not to be in dispute, thereby accounting for them. We cannot say that the evidence preponderates against the trial court's treatment of them, and we therefore find this issue adverse to Wife.

IV.

The second major disagreement between the parties concerns the proceeds from the sale of the marital residence, *i.e.*, the $17,500 that Wife withdrew from the parties' joint account. Husband asserts that he is entitled to half of these funds, and Wife seeks reimbursement from Husband of "the portion of child support paid to her with her share of the joint savings account."

Wife withdrew approximately $17,500 from the joint account on February 3, 1997. On May 15, 1997, the trial court ordered Wife to pay the balance of any funds held by Wife that were withdrawn from the parties' joint account into court. Wife subsequently paid approximately $3,700 into court, the balance of approximately $13,800 having been spent on, among other things, $2,200 in attorney's fees, $6,000 for a year's worth of rent, and $5,600 for moving and living expenses for her and the parties' daughter. On June 4, 1997, the trial court ordered that the $3,700 paid into court "be paid for the minor child's education and for temporary alimony pendente lite." In its June 2, 1999 order, the trial court found the following:

> The Court has reviewed the statutory factors for the setting of alimony in light of the proof in this case and determines no alimony should be awarded. Although it is a marriage of lengthy duration, the relative earning capacities of the parties are comparable as is the education and training of each which qualifies them for their employment potential. The Court finds no other factor which would be pertinent to an award of alimony to [Wife]. The Court does not find any fault of [Husband] which, when compared with the fault of [Wife], would result in this Court finding it appropriate to consider relative fault.

Subsequent to this order, Husband filed a motion to alter or amend asserting that he is entitled to half of the $17,500 that Wife withdrew from the joint account. In response to this motion, the trial court stated the following:

> The Court denies [Husband's] claim for reimbursement….It was the testimony of [Wife] payments were made on marital debt, on car insurance six months in advance, and to pay off the line of credit on

the car.  Part of the money was used for money for a Notre Dame trip for [the child] and to establish [Wife and child] in a new residence.  The Court finds the monies were used for necessary support of [Wife] and the minor child prior to the entry of an order for alimony or child support *pendente lite*.  Accordingly, the motion to alter or amend…is denied.

Husband now asserts that the award of temporary support is excessive.  Wife seeks reimbursement of "the portion of child support paid to her with her share of the joint savings account," arguing that the trial court's order permits Husband to "satisfy half of his child support obligation with [Wife's] own money."

The amount and duration of alimony, including alimony *pendente lite*, are issues with respect to which the trial court exercises wide discretion.  ***Garfinkel v. Garfinkel***, 945 S.W.2d 744, 748 (Tenn. Ct. App. 1996).  After careful review of the record in this case, we cannot say that the evidence preponderates against the trial court's treatment of the funds Wife withdrew from the joint account.  As stated previously, such an alimony determination is entitled to great weight on appeal, and we find no abuse of discretion on the part of the trial court on this issue.  Accordingly, we find no error as to the trial court's decrees with respect to the funds under discussion.

V.

The judgment of the trial court, as modified, is affirmed.  The case is remanded to the trial court for the entry of an appropriate order in accordance with this opinion and for such further proceedings, if any, as may be required.  Exercising our discretion, we tax each of the parties with half of the costs on appeal.

_____
CHARLES D. SUSANO, JR., JUDGE